# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD THOMPSON**, *et al.*, | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **US AIRWAYS, INC.**, *et al.*, | : | |
| **Defendants.** | : | № 09-cv-870 |

## M E M O R A N D U M

PRATTER, J.  JUNE 15, 2010

**INTRODUCTION**

Plaintiffs here are a purported class of individuals who have worked as skycaps at US Airways terminals in Pennsylvania. Skycaps are the aviation equivalent of the railroad redcaps: porters who assist passengers checking luggage at the entrance of the terminal. The Plaintiffs in this case are or have been employed by Prime Flight Aviation Services ("Prime Flight"), which is one of the two defendants in this case. US Airways is the other.

In 2005, US Airways began charging its passengers a $2 fee, collected by skycaps, for each bag checked at curbside. The Plaintiffs claim that this fee has "dramatically" reduced the amount of money that travelers give skycaps in tips. On February 3, 2009, Plaintiffs filed a four-count Complaint against US Airways and Prime Flight, alleging that the Defendants' conduct had violated two state statutes, as well as principles of Pennsylvania common law.[1] Specifically, the Plaintiffs claim that skycaps' income derives primarily from tips, and that since the initiation of the fee, many skycaps employed by Defendants have been making less than minimum wage. In addition, the Plaintiffs assert that skycaps often were forced to work through meal breaks and that

---

[1] The Plaintiffs initially filed their Complaint in the Philadelphia County Court of Common Pleas. The Defendants removed the case to federal court on February 27, 2009.

many did not receive overtime compensation.

On March 26, 2009, US Airways filed a Motion to Dismiss each of the four counts against it (Docket No. 20). For the reasons discussed below, the Court will deny the Motion as to Counts I, II and IV of the Complaint, and will grant the Motion as to Count III.

### JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The Plaintiffs are citizens of Pennsylvania; US Airways is a Delaware corporation headquartered in Tempe, Arizona; and Prime Flight is an Ohio corporation headquartered in Nashville, Tennessee.

### FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this Motion to Dismiss, facts alleged in the Complaint are considered to be true. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). On that basis, the facts are as follows:

Plaintiffs allege that skycaps have traditionally received "most" of their compensation in the form of tips provided by airline passengers (Complaint, ¶ 2). When US Airways initiated its $2-per-bag curbside check-in fee in 2005, "skycaps' compensation ... decreased dramatically, as few passengers [were] willing to pay additional tips on top of this charge" (*id.* at ¶ 3). Plaintiffs assert that "[m]any passengers believe the $2 charge is paid to the skycaps," and argue that both US Airways and Prime Flight have "knowingly profited off of this misunderstanding" (*id.* at ¶ 4). Indeed, Plaintiffs characterize the fee as direct misappropriation of tip revenue, since it functions, in practice, as a requirement that the skycaps remit to US Airways "a large portion of the tips they receive[ ] from patrons in order to cover [the] mandatory per bag fee" (*id.* at ¶ 21).

Plaintiffs further claim that as the skycaps' tip income decreased, "many skycaps' compensation fell below minimum wage" – a fact that the Defendants intentionally obscured by "forc[ing the skycaps] to over-report their tips to appear as though they were making minimum wage" (*id.* at ¶ 5). In addition, the Defendants allegedly "forced [the skycaps] to work through their meal breaks," and skycaps "did not receive compensation for work performed off-the-clock and/or overtime compensation for work performed in excess of forty hours per week" (*id.* at ¶ 6).

On February 3, 2009, the Plaintiffs filed a complaint against US Airways and Prime Flight in the Philadelphia County Court of Common Pleas. Several weeks later, the Defendants removed the case to this Court. The gravamen of the Complaint is that the Defendants violated Pennsylvania's minimum wage law and deprived the Plaintiffs of tips and other compensation to which they were legally entitled. The Complaint sets out four specific counts.

Count I claims that the Plaintiffs and proposed class members were "tipped employees," as defined in 34 Pa. Code. § 231.1, and that Defendants violated Section 4(a) of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.104(a), by "paying [tipped] employees a wage that was less than the [minimum] wage in effect under Section 4 of the Act, and by depriving [these] employees of tips to which they had a legal entitlement and which should have otherwise been credited towards the employees' hourly wages" (*id.* ¶ 36).[2] Count II alleges that Defendants violated Section 4(c) of the PMWA, 43 P.S. § 333.104(c), by requiring Plaintiffs and proposed class members to work more than 40 hours per week without overtime compensation, and also by deducting 30 minutes for lunch breaks even when skycaps took a shorter break or no break at all.

---

[2] According to the Plaintiffs, Defendants were statutorily required to pay a minimum wage rate of $5.15 per hour from the beginning of the class period until December 31, 2006; $6.25 per hour beginning January 1, 2007; and $7.15 per hour beginning July 1, 2007.

Count III alleges that Defendants have tortiously interfered with an implied contractual and/or business relationship between skycaps and airline passengers; and Count IV claims that Defendants were unjustly enriched by their allegedly unlawful conduct.

Because the Plaintiffs allege that the Defendants were unjustly enriched, Plaintiffs argue that they are entitled to the common law remedy of *quantum meruit* (literally, "as much as he has deserved"), which in this case would include any wages and overtime compensation not paid to Plaintiffs in violation of Pennsylvania law. They also seek "interest, attorneys' fees, costs and expenses, and equitable, restitutionary, and injunctive relief" (*id*. ¶ 17), as well as "any other relief as the Court may determine is appropriate" (*id*. ¶ 40). Notably, the Complaint does not specify what kind of injunctive relief the Plaintiffs are hoping to receive.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley*, 355 U.S. at 45-46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley*, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id.* (citations omitted).

In making such a determination, courts "must only consider those facts alleged in the

complaint and accept all of those allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Twombly*, 550 U.S. at 555-556. The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (*citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

In ruling on a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## DISCUSSION

US Airways has moved to dismiss the entire Complaint on several grounds. First, it argues that each of Plaintiffs' claims is preempted by federal law under the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.S. § 40101, *et seq.* US Airways also argues that the Plaintiffs' two statutory claims should be dismissed because Plaintiffs have failed to allege that US Airways is a joint employer; and that the Plaintiffs' two common law claims should be dismissed because Plaintiffs have failed to state a claim for tortious interference or unjust enrichment. The Court will address each of US Airways' arguments in turn.

5

## I. Preemption

### A. *Preemption and the ADA*

"In deciding whether a federal law preempts a state statute, our task is to ascertain Congress's intent in enacting the federal statute at issue." *Shaw v. Delta Air Lines*, 463 U.S. 85, 95 (1985). Courts begin the preemption analysis with a presumption that Congress did not intend to supplant state law – and this presumption is heightened where federal law is said to bar state action in fields of traditional state regulation. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-655 (1995). In such matters, state law is only preempted if Congress's intent to supercede state power is "clear and manifest." *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 438 (2002).

In determining Congress's preemptive intent, the Court must focus on the "plain wording" of the allegedly preemptive statute. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 62 (2002). Yet, in appropriate circumstances, courts may also consider the "structure and purpose of the statute as a whole." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996). Such purpose is most reliably revealed by the statute's text, but it can also be exposed "through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers and the law." *Id*.

As the ADA's name suggests, its purpose was to deregulate the airline industry and promote "efficiency, innovation, and low prices" through "maximum reliance on competitive market forces." *Morales*, 504 U.S. at 378. In order to prevent states from interfering with the new regime, Congress included in the ADA a preemptive provision, which would "ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S.

at 378. This provision says no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).[3] Pennsylvania common law is considered an "other provision having the force and effect of law" for purposes of the ADA. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (*citing Morales*, 504 U.S. at 388; *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995)).

The Supreme Court has described the preemptive purpose of the ADA as "broad," *Morales*, 504 U.S. at 383, and has held that Congress intended for the statute to preempt all state laws "having a connection with, or reference to" airline prices, routes, and services.[4] *Id.* at 383-384. Such a connection exists where the law expressly references the air carrier's prices, routes or services, or where it has a "forbidden significant effect upon the same." *Id.* at 388; *see also Gary v. Air Group, Inc.*, 397 F.3d 183, 186 (3d Cir. 2005). The requirement that such effect be "significant" means that "some state actions may affect [airline fares or services] in too tenuous, remote or peripheral a manner to have preemptive effect.'" *Morales*, 504 U.S. at 390; *see also Taj Mahal Travel*, 164 F.3d 186, 191 (3d Cir. 1998); *Gary*, 397 F.3d at 186.

### B. *The Massachusetts Preemption Cases*

No court in the Third Circuit has yet applied the Supreme Court's "significant effects"

---

[3] Preemption may be either expressed or implied, *see Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98 (1992), but the presence of the explicit preemptive provision in the ADA means that implied preemption is not an issue in this case.

[4] As several commentators have observed, Congress itself did not define the term "services" for the purposes of the ADA, nor did it enumerate types of state law claims that might be preempted. *See, e.g.,* Daniel Rosenthal, "Legal Turbulence: The Court's Misconstrual of the Airline Deregulation Act's Preemption Clause and the Effect on Passengers' Rights," 51 Duke L.J. 1857, 1870-1871 (2002).

test to the relationship between the ADA and state law claims like those brought by the skycaps in this case. However, three federal judges in Massachusetts, each considering similar claims brought by skycaps, have arrived at three different conclusions regarding the preemptive effect of the ADA as applied to claims brought under the Massachusetts Tips Law ("MTL"), Mass. Gen. Laws ch. 149, § 152A, which requires payments intended as tips to be remitted to service employees,[5] and Massachusetts common law. *See Travers v. JetBlue Airways*, 2009 U.S. Dist. LEXIS 63699 (D. Mass., July 23, 2009) (O'Toole, J.) (dismissing skycaps' state law claims as preempted); *Brown v. United Air Lines*, 656 F. Supp. 2d 244 (D. Mass. 2009) (Gertner, J.) (same result, employing somewhat different reasoning); *DiFiore v. American Airlines*, 2009 U.S. Dist. LEXIS 120523 (D. Mass., Dec. 23, 2009) (Young, J.) (disagreeing with *Travers* and *Brown*, and holding that the skycaps' MTL claim was not preempted).

In *Travers*, Judge O'Toole concluded that because JetBlue would have to alter its decisions about its prices and services if the skycaps' state law claims were successful, the state law claims necessarily "related to" those prices and services. *Travers*, 2009 U.S. Dist. LEXIS 63699 at *7-8. However, as Judge Young observed in *DiFiore*, this analysis – although based on a common-sense understanding of the words "related to" – does not appear to give appropriate weight to the Supreme Court's injunction that only "forbidden significant effects" on prices and services are to be considered in determining if a state law is precluded by the ADA. *DiFiore*, 2009 U.S. Dist. LEXIS 120523 at *26 n.7 (*citing Morales*, 504 U.S. at 388). In addition, as

---

[5] The Supreme Judicial Court of Massachusetts has held that the MTL applies whenever an airline institutes a "service charge" and passengers reasonably believe this charge will be given to service employees, even if the service employees are not employed by the airline itself. *DiFiore v. Am. Airlines, Inc.*, 454 Mass. 486, 494 (2009) (certifying question submitted by the U.S. District Court for the District of Massachusetts).

8

Judge Gertner noted in *Brown*, the skycaps' stated objection was to the manner in which the $2 baggage fee was collected and not to the fee itself, meaning that any "substantial effect" of the state laws would necessarily be on services rather than price.[6] *Brown*, 656 F. Supp. 2d at 248.

In an early ruling in *Brown*, Judge Gertner actually found that the skycaps' state law claims were *not* preempted by the ADA. *See Brown*, 656 F. Supp. 2d at 247. Six months later, however, she reconsidered her opinion, citing not only *Travers* – which had been decided in the interim – but also the case of *N.H. Motor Transp. Ass'n v. Rowe*, 552 U.S. 364 (2008), in which the Supreme Court applied the "significant effects" test and held that a federal statute modeled on the ADA preempted Maine laws regulating the delivery of tobacco products.[7]

In revisiting her initial preemption opinion, Judge Gertner interpreted *Rowe* as having emphasized that "courts should not imply broad exceptions to the preemption provision for areas of traditional state concern" – including employment law. *Brown*, 656 F. Supp. 2d at 251 (*citing Rowe*, 552 U.S. at 372-373). She conducted a "significant effects" analysis, and held that the claims would have a significant effect on an airline service, *viz.*, curbside baggage checking:

> [The skycaps' state employment law] claims would require passengers to pay online beforehand, or with a credit card at the curb, or even remove service from the curb completely. Each of these options would dramatically alter the nature of the curbside check-in service. ... [E]limination of curbside check-in would alter baggage handling service altogether. Since each of these proposed solutions for the airline to avoid further liability would alter the curbside check-in service, the Plaintiffs' claims are preempted ... .

---

[6] As in this case, the skycaps in *Brown* did not claim the fee was unlawful *per se*.

[7] *Rowe* analyzed preemption of the Federal Aviation Administration Authorization Act, a 1994 statute that borrows the language of the air-carrier preemption provision of the ADA and applies it to motor carriers. *Rowe*, 552 U.S. at 370. Due to the similarity of the preemption provisions in both statutes, the Supreme Court in *Rowe* heavily emphasized *Morales*.

*Id.* at 251 (*citing Travers*, 2009 U.S. Dist. LEXIS 63699 at *7-9).

Judge Gertner based her original, pre-*Travers* preemption ruling in *Brown* on the authority of Judge Young's first preemption ruling in *DiFiore v. American Airlines*, 483 F. Supp. 2d 121 (D. Mass. 2007), in which the Court held that American Airlines had failed to overcome the heightened presumption against preemption that exists in areas of traditional state regulation. *Brown*, 656 F. Supp. 2d at 247 (*citing DiFiore*, 483 F. Supp. 2d 121). But while Judge Gertner agreed to revise her view of preemption in the wake of *Travers*, Judge Young declined American Airlines' request that he revisit his earlier ruling. *See DiFiore*, 2009 U.S. Dist. LEXIS 120523. In so doing, he noted that *Rowe* had not relevantly altered the legal landscape, since the opinion did not dethrone the "significant effects" test, but merely clarified that states and courts cannot carve out whole areas of state law – e.g., public health or employment law – that are uniformly exempt from ADA preemption. *Id.* at *19-20.

Like Judge Gertner, Judge Young concluded that the skycaps' state law claims did not have a "forbidden significant effect" on prices. *Id*. at *27, n.7. Unlike Judge Gertner, he held that these claims also had no such effect on services. Judge Young characterized the airline's method of collecting the fee as "a crass attempt to snooker the public into parting with the fee under the guise of a tip (which most travelers were accustomed to paying) rather than up- front competition with other airlines as to this aspect of unbundling." *Id.* at *24-25. And he argued that modifying or doing away with this "sneaky" and "disingenuous" practice would not prevent the airline from offering a $2-per-bag curbside check-in service in essentially its current form, since there are other reasonable means by which the fee might be charged:

For example, the handling fee could be charged simultaneously with the airline's $15 baggage

fee, which usually is paid by a credit card at curbside during the check-in process. ... The fact that customers will use a credit card instead of cash is not a significant change to the nature of the "service," especially in today's society, which has shifted considerably toward electronic methods of payments. ... Any of the possible suggested alterations [in the manner in which the fee is collected] will not significantly change the nature of curbside check-in services: they will not force customers to wait in lines or carry their own baggage. Thus, American fails to show that the [Massachusetts] Tips Law has a significant effect on airline services.

*Id.* at *25-26.

To be sure, the *Travers*, *Brown* and *DiFiore* opinions have no binding authority here, but they are instructive, particularly taken as a group. In each of those cases, skycaps brought a claim pursuant to a state law which has no direct analogue in the two provisions of the PMWA under which Plaintiffs have filed claims in this case.[8] Nevertheless, the reasoning in those opinions is useful to consider inasmuch as each addressed one of the same questions presented here, namely, does the ADA preempt state law claims that arise from an airline's employment of a curbside baggage checking fee that is to be collected from passengers by skycaps?

### C.  *Preemption Conclusion*

The ADA does not preempt all state employment claims against airlines. *See, e.g., Gary v. Air Group, Inc.*, 397 F.3d 183, 189-90 (3d Cir. 2005) (a whistleblower retaliation claim is "too remote and too attenuated to fall within the scope of the ADA" and is not preempted). Thus, courts analyzing state employment claims must apply the *Morales* "forbidden significant effects"

---

[8]  The MTL requires that payments intended as tips to be remitted to service employees, while the relevant portions of the PMWA govern the minimum hourly wage for tipped employees. In two of the Massachusetts cases, *Travers* and *Brown*, the skycaps brought state common law claims that do parallel those in this case: *viz.*, tortious interference and unjust enrichment. *See Travers*, 2009 U.S. Dist. LEXIS 63699 at *2; *Brown*, 656 F. Supp. 2d at 244.

analysis. *See, e.g., id.* at 186-187. *Rowe* did not abrogate this test.[9]

In this case, resolution under state law of the Plaintiffs' claims would not have a "forbidden significant effect" on prices. The skycaps do not seek the elimination of the $2 fee, but instead challenge the airline's method of collection – which, they claim, operated to deprive skycaps of tip revenue to which they were legally entitled. This case is analogous to *DiFiore*, in which Judge Young noted that, while the airline had accurately characterized the curbside check-in fee as a revenue stream that helps offset costs, this fact does not settle the question of whether the skycaps' claims have a "significant effect" on prices:

> [The airline's] argument does not go to the key point: the skycaps dispute not the fee itself, but only the manner in which this fee is charged. ... As Judge Gertner observed in *Brown*, changing the manner in which the fee is charged may make a few people refrain from using the service ... but this affects prices in too remote a manner to constitute a significant effect.

*Id*. at *22-23 (*citing Brown*, 656 F. Supp. 2d at 250).

The question, then, is whether the claims would have such an effect on "services" – in particular, the airline's curbside baggage checking service.[10] In applying the "significant effects"

---

[9] The *Rowe* opinion notes that Congress is unlikely to have intended to create a broad "public health" exception to the preemption provision of a federal statute modeled on the ADA. *Rowe*, 552 U.S. at 375. However, (1) *Rowe* applies the "forbidden significant effects" test (the Court held that the state law under review had a "significant" impact on trucking, and that its "connection with trucking [was] not tenuous, remote, or peripheral," *id*.); and (2) the Plaintiffs in this case have not argued that there is a broad employment exception to ADA preemption. *Rowe* is principally relevant to this case for reasons noted in fn. 10, *infra*.

[10] The ADA's failure to define the word "service" has led to some confusion about its breadth. *See* Rosenthal, 51 Duke L.J. at 1870-1871. But after *Rowe*, an airline's curbside baggage checking service clearly falls within the ambit of the term. The U.S. Court of Appeals for the Third Circuit has historically read the word "service" narrowly, holding that it refers only to "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail" – as opposed to mere "amenities," such as "an airline's provision of in-flight

12

test, the principal consideration is the nature and scope of the remedies sought, since the effect of a claim must be measured by its probable consequences in the event of a verdict in favor of the claimant.[11] The question, then, is what would happen to this service if Plaintiffs prevail.

In this case, the Plaintiffs argue that they have not been paid Pennsylvania's minimum wage, and that the manner in which the curbside baggage checking fee is collected deprives skycaps of tip revenue to which they are entitled. These alleged deficiencies are not inextricably intertwined with the provision of the baggage checking service. Clearly there is no inherent inconsistency in providing this service while complying with state minimum wage laws. Nor is there any reason to think that US Airways would need to discontinue the service if its means of collecting the service fee was modified to reduce passenger confusion regarding the nature of the payment. As Judge Young observed in *DiFiore*, it is easy to imagine collection methods that would enable US Airways to provide – and charge the same fee for – the service in question while simultaneously curing some or all of the practices alleged to be unlawful.

Because the Plaintiffs' state law claims do not have a forbidden significant effect on airline prices or on any airline service, these claims are not preempted by the ADA. Not only is

---

beverages, personal assistance to passengers, the handling of luggage," and so on. *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193-94 (3d Cir. 1998) (*quoting Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998)). Under this reading, curbside baggage checking would seem to be an "amenity" rather than a "service." But as the Court of Appeals for the Second Circuit has observed, this narrow reading is inconsistent with *Rowe*. *See Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (the *Rowe* opinion "necessarily defined 'service' to extend beyond prices, schedules, origins, and destinations," thereby abrogating the minority reading adopted in the Ninth and Third Circuits).

[11] As Judge Gertner observed in *Brown*, "a mere request that airlines change the signs at curbside baggage check-in presumably would not invoke ADA preemption," since such a requirement would not have a significant effect. *Brown*, 656 F. Supp. 2d at 251, fn. 6.

this result dictated by *Morales*, but it is also consistent with the purpose of the ADA itself, which was designed to deregulate the sclerotic airline industry, not to exempt airline employees from overtime pay and minimum wage laws that present no danger of interfering with this project.[12]

**II.     Joint Employer**

US Airways also argues that all of Plaintiffs' claims against US Airways should be dismissed on the ground that Plaintiffs have failed to allege that the airline is the skycaps' joint employer, along with Prime Flight. US Airways argues that the skycaps' claims cannot proceed unless the skycaps have adequately pled that they are employed by the airline.

Although Pennsylvania law does not clearly establish the test to be employed in order to evaluate the existence of "joint employer" status, analysis of this issue is always intensely factual in nature. *See Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997) ("the precise contours of an employment relationship can only be established by a careful factual inquiry").[13] At this stage, the factual record is thin. Plaintiffs have alleged several relevant facts that might suggest that US Airways was a joint employer, including that the skycaps worked on premises owned by US Airways, and also that US Airways controlled decisions relating to skycap compensation or the

---

[12]     "Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry." *Charas*, 160 F.3d at 1261.

[13]     At least two different employer tests have been employed by district courts in the Third Circuit. In *Mattus v. Facility Solutions, Inc.*, 2005 U.S. Dist. LEXIS 28700 (D.N.J., Nov. 21, 2005), the Court applied the so-called "economic reality" test; while in *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D.N.J. 2005), the Court applied the *Zheng* test (named for *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)). The "economic reality" test and the *Zheng* test are both fact-intensive.

performance of services. Plaintiffs have satisfied the notice pleading standard, and it would be inappropriate for the Court to dispose of all of Plaintiffs' claims against US Airways before any discovery has been conducted.[14]

### III. Common Law Claims

In addition to arguing that all of Plaintiffs' claims are preempted by the ADA, and that Plaintiffs have failed to sufficiently allege that US Airways is a joint employer, Defendants have also argued that each of Plaintiffs' two common law claims – tortious interference with an implied contractual relationship[15] and unjust enrichment – should be dismissed because Plaintiffs have failed to state claims upon which relief can be granted.

#### A. *Tortious Interference*

To set forth a tortious interference claim, plaintiffs must plead: (1) the existence of an existing or prospective contractual relationship between plaintiffs and a third party; (2) intent on the part of defendants to harm the plaintiffs by interfering with this relationship; (3) absence of privilege or justification for such interference; and (4) actual harm or damage to plaintiffs as a

---

[14] This case is similar to *Braden v. County of Washington*, 2008 U.S. Dist. LEXIS 98511 (W.D. Pa., Dec. 5, 2008), in which the Court denied an alleged employer's motion to dismiss a worker's claim, principally on the ground that more factual development would be required before the Court properly could address the issue of joint employment.

[15] As noted above, Plaintiffs have actually alleged tortious interference with an implied contractual and/or business relationship. But Pennsylvania does not recognize a tort based on interference with a "business relationship"; therefore the Court will construe this as a claim of tortious interference with an implied contractual relationship. *See Blackwell v. Eskin*, 80 Pa. D. & C.4th 284, 312 (Pa. Com. Pl. 2006) ("Plaintiff articulates a claim for 'interference with prospective economic advantage' but there is no such claim under Pennsylvania law ... [and thus] this Court believes that Plaintiff intended to claim 'tortuous interference with prospective contractual relations'").

result of defendants' conduct.  *United States Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 925 (3d Cir. 1990) *(citing Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 208 (Pa. 1979)).  Under Pennsylvania law, an existing or prospective contractual relationship is a required element of the tort.  *Thompson Coal Co.*, 488 Pa. at 208, fn. 7 ("underlying [the tort's] requisites, of course, is the existence of a contract or of a prospective contractual relation between the third person and the plaintiff").

In this case, Plaintiffs claim that Defendants interfered with an implied contractual relationship between skycaps and the air-traveling public.  However, tips are discretionary payments, and Plaintiffs have failed to plead facts that would show the existence of an implied contractual relationship between skycaps and passengers.  Since Plaintiffs have failed to satisfy this element of the tort, their tortious interference claim will be dismissed.

### B. *Unjust Enrichment*

Unjust enrichment is an equitable doctrine, and its elements are met where: (1) benefits have been conferred on one party by another; (2) the recipient has appreciated the benefits; and (3) the recipient has accepted and retained the benefits under such circumstances that it would be inequitable or unjust for the recipient to retain the benefits without payment of value.  *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (applying Pennsylvania law) (*citing* 16 Summary of Pa. Jur. 2d Commercial Law § 2.2 (1994)).

In this case, the Plaintiffs have adequately pled each of these elements of the tort.  The benefit allegedly conferred is the difference between the wages actually paid to skycaps and the

wages that would have been paid had US Airways complied with the PMWA.[16] Taking Plaintiffs

allegations as true, it would be unjust for Defendants to pay skycaps as tipped employees while at

the same time employing a fee collection system which misleads passengers into believing they

are tipping skycaps when they are actually paying an airline fee. Similarly, it would be unjust for

the Defendants to otherwise underpay skycaps for hours actually worked.

Defendants argue that the conduct alleged in this case does not rise to the level of

unconscionability required to sustain an unjust enrichment claim. While "unconscionability" has

not been interpreted extensively in this context, there are apposite cases in which courts applying

Pennsylvania law have implied that it is an element of the tort. *See Smith-Cook v. National R.R.*

*Passenger Corp.*, 2005 U.S. Dist. LEXIS 27297 at *40 (E.D. Pa., Nov. 10, 2005) ("to recover

under *quantum meruit*, a claimant must show that the defendant either wrongfully secured or

---

[16] The $2 curbside baggage checking fee itself is not a form of unjust enrichment, since the airline is entitled to charge this fee, and under no collection regime would the fee be remitted to the skycaps. The unjust enrichment here is the "right" to compensate the skycaps for their work at a sub-minimum wage – a right to which the Defendants are legally entitled only if the skycaps are making a sufficient amount in tips to clear the statutory hurdle.

Therefore, it is not accurate to say in this case, as the Court did in *DiFiore,* 483 F. Supp. 2d at 128, that an unjust enrichment claim "may turn on whether the $2 fees are really tips meant for the skycaps." Even assuming that *none* of the $2 payments are intended to be tips, and that a change in the method of collection would have no impact on the amount of money skycaps receive from passengers, the Defendants could be considered unjustly enriched if for any reason they were paying skycaps a wage beneath the statutory minimum while skycaps were not, taken as a group, receiving tips sufficient to make up the difference.

Of course, the skycaps claim that the way in which the $2 fee is collected is the reason that they have not received enough tip compensation to elevate their wages over the statutory threshold. But on the unjust enrichment theory presented in this case, the skycaps would not be entitled to the $2 fee itself; they are merely entitled to be paid the Pennsylvania minimum wage for every hour worked. *Cf. Difiore*, 483 F. Supp. 2d 121 (adjudicating claims under the MTL, which explicitly entitles tipped employees to payments intended as tips).

17

passively received a benefit that would be unconscionable for the defendant to retain without compensating the provider") (*citing Green Stripe, Inc. v. Berny's Internacionale*, 159 F. Supp. 2d 51, 56 (E.D. Pa. 2001); *Halstead v. Motorcycle Safety Found., Inc.*, 71 F. Supp. 2d 455, 459 (E.D. Pa. 1999)); *but see Allegheny Gen. Hosp.*, 228 F.3d 429, 447 (making no reference to unconscionability in setting out the elements of unjust enrichment).

At this stage in the litigation, Plaintiffs have alleged facts sufficient to clear any unconscionability hurdle. Skycaps are semi-skilled workers who rely on tip revenue to make a minimum wage. If, in fact, the Defendants have failed to pay Plaintiffs for time worked, or have been paying Plaintiffs a sub-minimum wage while simultaneously curtailing skycaps' ability to receive tips, then it would indeed be unconscionable for the Defendants to retain the benefit that they have accrued at the skycaps' expense. Plaintiffs have alleged facts that would, if true, entitle them to the remedy of *quantum meruit*. *See, e.g., Eastland v. Du Pont*, 1996 U.S. Dist. LEXIS 10360 (E.D. Pa., July 23, 1996) (allowing an unjust enrichment claim to proceed where plaintiff-employee claimed that defendant-employer failed to pay him for services that he had rendered in the course of their employment relationship).[17]

**CONCLUSION**

The Motion to Dismiss is denied as to Counts I and II of the Complaint, which present claims under the Pennsylvania Minimum Wage Act, and also as to Count IV, which alleges that

---

[17] Because the Court has determined that Plaintiffs adequately have pled that US Airways is a joint employer, this opinion will not address cases cited by US Airways which suggest that unjust enrichment requires a direct employer-employee relationship.

18

Defendants were unjustly enriched.  The Motion is granted as to Count III, which alleges tortious interference with a contractual or prospective contractual relationship.

An order to this effect follows.

BY THE COURT:


_____
S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE