IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD THOMPSON,** *et al.*, | : | CIVIL ACTION |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **US AIRWAYS, INC.,** *et al.*, | : | |
| **Defendants.** | : | No. 09-cv-870 |

**M E M O R A N D U M**

PRATTER, J.                                                                              JULY 15, 2011

      Plaintiffs here are a purported class of individuals who have worked as skycaps at US Airways terminals in Pennsylvania. Skycaps are the aviation equivalent of the railroad redcaps – that is, porters who assist passengers checking luggage at the entrance of the terminal. The Plaintiffs in this case are or have been employed by Prime Flight Aviation Services ("Prime Flight"), which is one of the two defendants in this case. US Airways is the other.

      In 2005, US Airways began charging its passengers a $2 fee, collected by skycaps, for each bag checked at curbside. The Plaintiffs claim that this fee has "dramatically" reduced the amount of money that travelers give skycaps in tips. On February 3, 2009, Plaintiffs filed a four-count Complaint against US Airways and Prime Flight, alleging that the Defendants' conduct had violated two state statutes, as well as principles of Pennsylvania common law.[1] Specifically, the Plaintiffs claim that skycaps' income comes primarily from tips, and that because of the initiation of the curbside baggage fee, many skycaps employed by Defendants have been making less than minimum wage. In addition, the Plaintiffs assert that skycaps often were forced to work through

---

[1] The Plaintiffs initially filed their Complaint in the Philadelphia County Court of Common Pleas. The Defendants removed the case to federal court on February 27, 2009.

meal breaks and that many did not receive overtime compensation.

In June of 2010, the Court dismissed Count III of the Complaint, which alleged tortious interference with a contractual relationship, but held that Plaintiffs could proceed with Counts I and II, asserting claims under the Pennsylvania Minimum Wage Act ("PMWA"),[2] and Count IV, alleging unjust enrichment. *Thompson v. US Airways, Inc.*, 717 F. Supp. 2d 468 (E.D. Pa. 2010). The Court nonetheless granted US Airways' separate request that Plaintiffs be required to show cause why Counts I and II should not be dismissed as released by the terms of a settlement agreement in *Mitchell v. US Airways, Inc.* (D. Mass., No. 1:08-cv-10629) ("the Settlement Agreement"), a case that was filed and resolved in the federal district court for the District of Massachusetts.

For the reasons discussed below, the Court finds that Counts I and II of the Complaint present state law claims of the kind that were released by the Settlement Agreement in *Mitchell*, and that the Plaintiffs have failed to demonstrate that they are entitled to collaterally attack that Settlement Agreement in this Court. Thus, Counts I and II will be dismissed to the extent that they are asserted by Plaintiffs who were members of the settlement class in *Mitchell*. However, because the Defendants' briefing does not make clear that all of the Plaintiffs in this case were members of the *Mitchell* class, the Court will reserve judgment temporarily as to the question of whether these two counts shall be dismissed in their entirety.

---

[2] Count I asserts that Plaintiffs and proposed class members were "tipped employees," as defined in 34 Pa. Code. § 231.1, and that the Defendants violated Section 4(a) of the PMWA, 43 P.S. § 333.104(a), by "paying [tipped] employees a wage that was less than the [minimum] wage in effect under Section 4 of the Act, and by depriving [these] employees of tips to which they had a legal entitlement and which should have otherwise been credited towards the employees' hourly wages."
    Count II alleges that Defendants violated Section 4(c) of the PMWA, 43 P.S. § 333.104(c), by requiring Plaintiffs and proposed class members to work more than 40 hours per week without overtime compensation, and by deducting 30 minutes for lunch breaks even when skycaps took a shorter break or no break at all.

**JURISDICTION**

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**FACTUAL AND PROCEDURAL BACKGROUND**

The background of this particular case is set forth in *Thompson*, 717 F. Supp. 2d 468.

In the earlier case pursued in Massachusetts, *Mitchell*, representative plaintiff skycaps sued US Airways and Prime Flight, alleging violations of 29 U.S.C. § 216(b), which is part of the Fair Labor Standards Act ("FLSA"), and state law, including the Massachusetts Minimum Wage Law.[3] On September 24, 2009, United States District Judge Gertner granted the *Mitchell* plaintiffs' motion for the final approval of a settlement, which resolved all of those plaintiffs' claims against Prime Flight and many of their claims against US Airways. The settlement class in *Mitchell* included all persons employed by Prime Flight in a tipped skycap position at any time from December 1, 2005 to December 31, 2008, including skycaps who employed by Prime Flight at US Airways terminals in Philadelphia. The Settlement Agreement states in relevant part:

> Limited Waiver & Release of Air Carriers. Upon the final approval by the Court of the Settlement Agreement, all claims relating to unpaid wages, overtime, any violation of any state minimum wage or tips statute (except to the extent any such claim may arise apart from the existence of a joint employment or employment relationship), retaliatory discharge, and any other claim, based in state or federal common law or statute, that requires the existence of an employment, joint employment, or quasi-employment relationship will be dismissed with prejudice as to U.S. Airways ... . For the avoidance of doubt, with respect to all state law claims, this Release of Claims applies to all Skycaps who do not exercise their rights to opt out of the Settlement Agreement, and, with respect to federal FLSA claims, this Release applies to all Skycaps who submit claims to opt in and participate in the settlement.

---

[3] *Mitchell* did not involve any claims under the Pennsylvania Minimum Wage Act.

US Airways now argues here that (1) the Plaintiffs in this Pennsylvania case were members of the settlement class in *Mitchell*; and therefore (2) any Plaintiff who failed to opt out of the *Mitchell* Settlement Agreement is now bound by its terms – and in particular, by its explicit release of all claims relating to unpaid wages or overtime, or under "any state minimum wage or tips statute."[4] To the extent that none of the Plaintiffs here opted out of the Settlement Agreement, this language would apply to, and thus bar, their PMWA claims in this case.[5]

The Plaintiffs have responded by attacking the Settlement Agreement collaterally, arguing that (1) the notice provided to class members in *Mitchell* was misleading, and thus violated their right to due process; and (2) the representative plaintiffs in *Mitchell* lacked standing to bring state-law claims on behalf of a nationwide class, and were therefore legally inadequate.

One question that neither of the parties seem to have addressed is whether at least some of the Plaintiffs in this case might not have been members of the *Mitchell* settlement class, which only included persons who were employed by Prime Flight as tipped skycaps during the period from December 1, 2005 to December 31, 2008. The Complaint in this matter was filed in state court on February 3, 2009, and removed to federal court on February 27, 2009. The Complaint states that the Plaintiffs were bringing their class action "on behalf of themselves and all other persons who are or have been employed as skycaps at Defendant US Airways, Inc. ... terminals by Defendant Prime Flight Aviation ... within the relevant statutory period," but it does not make clear what "the relevant statutory period" might include.

---

[4] Prime Flight essentially echoes these arguments, which apply equally to claims asserted against each of the two Defendants.

[5] At oral argument on this Motion to Show Cause, Plaintiffs' acknowledged that none of the Plaintiffs in this case opted out of the *Mitchell* Settlement Agreement.

**DISCUSSION**

To the extent that the Plaintiffs in this case were members of the settlement class in *Mitchell*, the Settlement Agreement in that case would, if valid, release their PMWA claims in this case. Leaving aside question of class membership, which the Court will discuss at the end of this memorandum, the only question that is in dispute is whether that Settlement Agreement is enforceable. To consider that issue, the Court must consider the law governing collateral attacks on class action settlement agreements, and then address the specific arguments regarding notice and standing in *Mitchell*.

### A. *Due Process and Collateral Attack*

It is inherent in our constitutional scheme that class members must have been granted certain due process protections if they are to be considered bound by a settlement agreement. In general, however, "there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it." *Hansberry v. Lee*, 311 U.S. 32, 42 (1940).

Where, as in *Mitchell*, a class is provided with opt-out rights, due process protections have been afforded where there has been adequate representation by the class representatives, notice of class proceedings, and an opportunity to be heard and participate in class proceedings. *In re Diet Drugs*, 431 F.3d 141, 145 (3d Cir. 2005). To determine whether absent class members were adequately represented, the Court should consider whether (1) the class had competent legal counsel;[6] and (2) whether the named plaintiffs adequately represented the class. *In re Prudential Ins. Co.*, 148 F.3d 283, 312-313 (3d Cir. 1998).

---

[6] The Plaintiffs do not argue that plaintiffs' counsel in *Mitchell* were inadequate.

5

The right to collaterally attack an already-certified class is accorded only those class members who have not been granted all of the requisite due process protections. *In re Diet Drugs*, 431 F.3d at 145. Practically speaking, this means "no collateral review [of a class action settlement agreement] is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the settlement agreement, and that collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation." *Id*. at 146.

B. *Notice*

The Plaintiffs argue that the notice provided to class members in *Mitchell* was misleading, because it "contain[ed] false statements informing class members that the settlement [would] only affect claims against Prime Flight and not the claims against ... air carriers," and that the failure to provide adequate notice renders the Settlement Agreement unenforceable. US Airways counters that (1) the Plaintiffs' brief quotes from a draft version of the notice, which differs materially from the notice that was actually provided; (2) the notice that *was* provided was clear and accurate as to whether the settlement would affect claims against air carriers; and (3) this Court need not even address the adequacy of notice, because the *Mitchell* court heard and rejected objections to the notice almost identical to the Plaintiffs' objections here, thus now forestalling collateral attack.

The version of the *Mitchell* notice that appears to have been distributed to class members in that case informed them that "even if you do not claim your share of the settlement proceeds, if you do not opt out of the case, then you will be releasing all of your state law claims against Prime Flight and state law claims against the air carrier for whom you provided services that require the existence of an employment relationship." Whether or not this notice was perfectly formulated, or

might be subject to objections other than those actually presented by the Plaintiffs in this case, it does make clear that settlement would release claims against both Prime Flight *and* air carriers.

In addition, the record shows that after the *Mitchell* court preliminarily approved the Settlement Agreement and proposed notice, the Court held a Rule 23 fairness hearing, during which it considered the very question of whether the notice adequately explained the Settlement Agreement and the scope of the release of claims. The Court found that the notice was adequate. This is reflected in the *Mitchell* court's order granting the motion for settlement approval.[7] In light of the fact that the Plaintiffs' objections to the notice in *Mitchell* were effectively raised and litigated in that case, the adequacy of that notice cannot be challenged once again in this Court as a means of invalidating the Settlement Agreement.

C.  *Standing*

The Plaintiffs' standing argument is premised on the theory that because the plaintiffs in *Mitchell* only asserted Massachusetts state law claims, and would have lacked standing to assert claims under the laws of all 50 states, these plaintiffs were inadequate class representatives, and the *Mitchell* court lacked jurisdiction to certify a settlement releasing claims under the laws of the other 50 states. US Airways counters that (1) the *Mitchell* court heard and rejected this argument, and (2) the Plaintiffs' argument is, at any rate, substantively incorrect.

The record does indeed demonstrate that the *Mitchell* court considered and rejected the

---

[7] Judge Gertner's Order of September 24, 2009, granting the motion for settlement approval, states that "the objectors' claim that the notice was confusing because it failed to explain the release of claims against other air carriers which are subject to joint employer agreements is rejected."
  The objectors referenced in the Order were five class members represented by the same set of attorneys who are representing the Plaintiffs in this case – and their argument regarding the clarity of the notice was very similar to that which has been presented here.

Plaintiffs' standing argument during the Rule 23 fairness hearing before finding that the *Mitchell* plaintiffs adequately represented the national class. This is reflected in the court's order granting the motion for settlement approval.[8] As a result, this issue is not subject to collateral attack. In this regard, this case is analogous to *In re Diet Drugs*, in which the Court of Appeals held that plaintiffs were not entitled to collaterally attack a class settlement on the basis of their objections to, *inter alia*, notice and adequacy of representation, because the district court that approved the settlement agreement had specifically considered these objections. 431 F.3d 141.[9]

    **D.**    *Class Membership*

As the Court has observed, the parties have not explicitly addressed the question of whether some of the Plaintiffs in this case might not have been members of the settlement class in *Mitchell*. Although the Court has determined that Counts I and II of the Complaint present state law claims of the kind that were released by the Settlement Agreement in *Mitchell*, and that the Plaintiffs have failed to demonstrate that they are entitled to collaterally attack that Settlement

---

[8] Judge Gertner's Order of September 24, 2009, approving the motion for settlement approval, states that "while the objectors claim that the named plaintiffs do not have standing to assert claims on behalf of a nationwide class, the class-as-certified plainly represents the relevant states."
    The objectors' arguments regarding standing were similar to those that the Plaintiffs have presented here. It is not entirely clear what the September 24, 2009 Order means by "the relevant states," but even the narrowest reading of this language would include Pennsylvania as a "relevant state," given that one of the objectors in *Mitchell,* Anthony Walker, was a Pennsylvania skycap, and the basis of the objectors' challenge to settlement approval was that the class-as-certified could did not have standing to resolve the objectors' non-Massachusetts state law claims.

[9] In addition, the Court observes that it is not unusual for courts in the Third Circuit to certify a nationwide class in cases that involve claims under the laws of many different states, *see, e.g., In Re: Warfarin Sodium*, 391 F.3d 516, 528-531 (3d Cir. 2004), and that it is well-established that courts that lack jurisdiction to hear certain claims may nevertheless release such claims as part of a judgment, *see Grimes v. Vitalink Communications*, 17 F.3d 1553, 1563 (3d Cir. 1994) (noting that "federal courts [may] enter[ ] judgments [to] release state claims that they would not have jurisdictional competency to entertain in the first instance").

Agreement in this Court, the Plaintiffs shall be provided with a limited opportunity to show that any of the Plaintiffs were not members of the *Mitchell* settlement class before the Court dismisses Counts I and II in their entirety.

**CONCLUSION**

The Plaintiffs have failed to show that they are entitled to collaterally attack the *Mitchell* Settlement Agreement, which releases their claims under the PMWA. As a result, Counts I and II of the Complaint must be dismissed to the extent that they are being asserted by Plaintiffs who were members of the settlement class in *Mitchell*. The Plaintiffs shall have an opportunity to present argument as to why any individual Plaintiffs might not be members of the *Mitchell* settlement class, and Defendants shall have an opportunity to respond.

An Order to this effect follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE